## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| HARRY BENION, ZACHARY GOODGALL, DAMON FRANKLIN, LESLIE MORGAN, and all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | **JURY DEMANDED** ) ) |
| LECOM COMMUNICATIONS, INC., and LECOM, INC., collectively d/b/a "LECOM" | ) ) ) ) ) |
| Defendants | ) ) ) |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

### I.   INTRODUCTION

1.     This is a collective action brought on behalf of individuals who perform or have performed telecommunications installation services in residences and businesses for Defendants LeCom Communications, Inc., and LeCom Inc., collectively d/b/a "LeCom" in the state of Michigan and who are classified by LeCom as independent contractors.

2.     LeCom contracts with Comcast, a cable company, to perform telecommunication installations and repair services for Comcast's customers.

LeCom controls the manner in which these services are performed, and LeCom benefits from the performance of these services. The individuals who perform these services, on whose behalf this collective and class action is brought, are improperly classified as independent contractors and are thus denied the protections of state and federal wage and hour laws.

3.      The Plaintiffs bring claims on behalf of a class of similarly situated individuals (the "technicians") who have performed telecommunications installation services and have been misclassified as independent contractors for LeCom throughout the state of Michigan who may opt-in to this case under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*  LeCom has violated the FLSA by failing to pay these individuals time and one-half their regular rate for hours worked in excess of 40 hours per week.

4.      The named Plaintiffs also bring this action on behalf of a Rule 23 class of others similarly situated, including all individuals in the state of Michigan who provided telecommunications installation services for Defendant LeCom and who, for the past six years, were subject to deductions, including "chargebacks," and other deductions from their paychecks for alleged violations of company policy and/or for the use of uniforms, logos, and equipment that should have been provided and paid for by LeCom.

## II.    JURISDICTION AND VENUE

5.      This Court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because Plaintiffs have brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this Court because the events giving rise to this action took place with the district where Defendants do business, maintain a corporate presence, and have substantial contacts.

## III.    PARTIES.

7.      Plaintiff Harry Benion is an adult resident of Auburn Hills, Michigan who provided telecommunications installation services for Defendant LeCom in Michigan as a purported "independent contractor" from October 2014 until LeCom terminated him in November 2015.  In 2013, Plaintiff Benion performed the same services for LeCom as a LeCom employee, performing the same work on the same number of days each week, pursuant to the same level of direction by the same LeCom supervisors as when he later worked as an "independent contractor" for LeCom.  Plaintiff Benion reported each morning and checked out each day at LeCom's location in Detroit, Michigan.

8.      Plaintiff Zachary Goodgall is an adult resident of Southfield, Michigan who has provided telecommunications installations services for

Defendant LeCom as a purported "independent contractor" from approximately

June 2005 to the present.  Plaintiff Goodgall reports each morning to LeCom's

location in Detroit, Michigan.

9.     Plaintiff Damon Franklin is an adult resident of Detroit, Michigan,

who provided telecommunications installation services for Defendant LeCom as a

purported "independent contractor" from approximately May 2015 until November

2015.

10.    Plaintiff Leslie Morgan is an adult resident of Ferndale, Michigan,

who provided telecommunications installation services for Defendant LeCom as a

purported "independent contractor" from August 2015 to November 2015.

11.    The named Plaintiffs bring this action on their own behalf and on

behalf of others similarly situated, including all individuals in the state of Michigan

who may choose to opt-in to this action who have provided telecommunications

installation services for Defendant LeCom, and who were treated as independent

contractors, and thus denied overtime pay for hours worked greater than forty (40)

hours per week.  Similarly situated individuals may also choose to opt-in to this

action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).

12.    Defendant LeCom Telecommunications, Inc. ("LeCom") is a

company having a principal place of business in Detroit, Michigan, out of which it

4

provides telecommunications services to businesses and individuals, and serves as a subcontractor for the national cable service company Comcast.

13.     On information and belief, LeCom relies on the cable services company Comcast, for the majority of its cable installation business in Michigan, and hires individuals whose sole job responsibilities are to install and repair cable in businesses and residences on behalf of LeCom's customers.  LeCom classifies some of these cable installers as employees, and others, like the named Plaintiffs and others similarly situated on whose behalf this action is brought, as "independent contractors."  However, all cable installers perform the same type of work under LeCom's control and direction regardless of how LeCom classifies them.

## IV.    STATEMENT OF FACTS

14.     Defendant LeCom hires individuals, including the named Plaintiffs and others similarly situated, to perform cable installation services in Michigan for LeCom's customers, as so-called "independent contractors."

15.     To be hired, LeCom requires individuals to contract with LeCom through one of five specific subcontractor companies at LeCom's direction. However, in reality it is LeCom that is employing, assigning work to, and directing each "independent contractor" cable installer (hereinafter referred to as

"technician" in the performance of the assigned work, regardless of which subcontractor LeCom has purported to hire each technician through.

16.     Although LeCom classifies these technicians as "independent contractors," the nature of the services they perform, and the manner in which they perform these services, make it clear that they are actually employees who are economically dependent upon LeCom for their livelihood.

17.     LeCom required the named Plaintiffs and other similarly situated technicians to work six days each week for LeCom, unless formal requests were made to LeCom.

18.     Technicians cannot take any time off or work fewer than six days in a week without prior approval from LeCom.  For example, in the fall of 2015, Plaintiff Benion asked LeCom for permission to work only five days a week, and to take some time off the following spring, but LeCom denied his requests and stated that Plaintiff Benion would be terminated if he did not report to work six days each week.

19.     LeCom supervisors organized the company's daily list of job assignments into routes for each technician, and LeCom required the technicians to report to its office every workday morning at approximately 7:00 a.m., to receive a route.

20.     Each route consists of a collection of telecommunication installation assignments at residences and businesses, and some routes require technicians to drive longer distances than other routes.  Since LeCom pays its technicians by the job, the longer distance routes are less favorable.  However, LeCom alone decides which technician is assigned which route, so technicians have no choice about which job assignments they work each day.

21.     LeCom also determines the order in which the technicians perform the job assignments in their route each day, and LeCom provides specific time windows for when technicians must perform each assignment in the route.  Technicians are not allowed to deviate from the job order or time windows given by LeCom without LeCom's prior approval.

22.     In recent months, LeCom has begun sending job assignments directly to the technicians via company issued smart phones on a job-by-job basis, so that when a technician completes one job, the next job is automatically sent to that technician's phone.  However, just like under the preious system set forth above, technicians are still required to report at LeCom's office each morning at 7:00 a.m., technicians still have no control over which assignments they are given, and technicians still cannot refuse to accept any assigned jobs.

23.    Technicians who wish to reject a job assignment must ask a LeCom supervisor for permission, but LeCom has the authority to deny permission for any reason.

24.    After technicians complete their assigned routes each day, LeCom requires each technician to call LeCom's office and acquire a "clear code" before they are allowed to leave the field.  LeCom only provides technicians with a clear code if LeCom has no additional job assignments for the technician that day; if LeCom orders a technician to perform additional job assignments, the technician is required to do so or risk suspension or termination at LeCom's discretion.  In addition, LeCom requires all of its technicians to return to LeCom's office to return equipment at the end of each shift.

25.    As a result of LeCom's requirement that its technicians work six days a week and accept all routes and additional job assignments that LeCom assigns, the technicians regularly work well over forty hours each week, and are unable to find time to perform the same type of work for any other entities besides LeCom. Moreover, even if the technicians were able to find time to work for others, LeCom prohibits its technicians from performing work for anyone other than LeCom as a matter of policy.

26.    Plaintiff Benion regularly worked six days a week for LeCom, totaling 80 to 90 hours each week, starting at 7:00 a.m. when he was required to

8

report to LeCom's office, and ending as late as 9:00 or 10:00 p.m. at the LeCom

terminal where he was required to report after his route and obtain LeCom's

permission to go home.

27.    Plaintiff Goodgall regularly worked six days a week for LeCom, often

around 80+ hours a week, from approximately 7:00 a.m. until anywhere from 8:00

p.m. to 10:00 p.m., and sometimes even later.

28.    Plaintiff Franklin regularly worked six days a week for LeCom, often

around 70 hours a week, from approximately 7:00 a.m. until as late as 9:00 p.m. or

10:00 p.m.

29.    Plaintiff Morgan regularly worked 12-14 hours each day, and between

60 and 80 (and sometimes more) hours per week, for LeCom.

30.    However, LeCom did not pay its technicians any overtime

compensation for hours worked in excess of forty each week.

31.    LeCom does not require technicians to have prior experience

performing telecommunication installation work, and indeed LeCom has hired

individuals to perform such work as "independent contractors" with no prior

experience. LeCom requires these individuals to ride along with another technician

to learn on the job.

32.    In addition to controlling the work schedules, routes, and order of job assignments for each technician, LeCom also directly supervises the manner in which the technicians complete their assigned work.

33.    Technicians regularly receive phone calls from LeCom employees throughout the day regarding the technicians' whereabouts and job performance, and to assign new jobs.

34.    LeCom controls the uniform and appearance of its technicians. All technicians must wear a shirt bearing Comcast's logo, and are prohibited from wearing a hat unless it is one that the technician purchased from LeCom bearing LeCom's logo. LeCom also requires its technicians to wear a badge with LeCom's logo on it while they are working.

35.    LeCom requires technicians to pay for the cost of uniforms, vehicle logos, smart phones, and other expenses that should have been borne by LeCom. LeCom provides its employee technicians with these items at no cost.

36.    LeCom prohibits the technicians from wearing any clothing or hat that bears any other logos besides Comcast or LeCom.

37.    Once each week, LeCom managers conduct mandatory morning meetings in which LeCom supervisors discuss the technicians' work performance, including job completion statistics as well as specific examples from the past week of work that the technicians did correctly or incorrectly in LeCom's opinion.

LeCom threatens to suspend technicians if they fail to report for a mandatory weekly meeting.

38.     LeCom also writes-up any technician who is found to not meet LeCom's detailed job performance specifications.  For example, LeCom requires technicians to use specific types of fittings and to record certain codes on specific colors of tape at various types of job installations, and failure to comply with these detailed specifications results in disciplinary paperwork in the personnel file that LeCom maintains for each technician.

39.     LeCom also controls the daily conduct of technicians through the use of backcharges, by unilaterally imposing and withholding backcharges of money from the technician's wages. Technicians have no means of challenging the backcharges.

40.     For example, LeCom requires technicians to return to job sites if the customer reports a signal loss, even if the signal was perfect when the technician originally left the job site.  If a technician does not return to a previous job site to fix a reported issue, LeCom will penalize the technician by refusing to pay any money to the technician, even when the technician performed extensive work at the job site.  LeCom also unilaterally deducts money from the technicians' wages if LeCom believes (correctly or incorrectly) that the technician lost equipment that LeCom issued to the technician.  In addition, even after LeCom pays a technician

11

for completing a job, if Comcast decides that the job was billed incorrectly and resulted in an overpayment, LeCom retroactively backcharges the difference from the technicians' wages.  Technicians are not able to challenge LeCom's decision to withhold their pay.

41.    LeCom has the authority to terminate any technician at any time, and for any reason (or no reason at all), including for failure to accept job assignments from LeCom, failure to report to work six days a week, and failure to complete all job assignments in the manner prescribed by LeCom.

42.    LeCom's warehouse provides all of the cables, boxes, fittings, and other similar equipment that its technicians need to perform cable installation and repair work for LeCom's customers.

43.    The vehicles used by the technicians in performing services for LeCom all weigh less than 10,001 pounds (GVWR).

## COUNT I
### (Violation of Fair Labor Standards Act (FLSA))

Defendant's knowing and willful failure to properly pay time-and-a-half for hours worked more than forty (40) in a week to individuals performing telecommunications installation services based on their misclassification as "independent contractors" violates the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*.

## COUNT II
### (Unjust Enrichment/Quantum Meruit)

Defendant's conduct, as set forth above, in reaping unfair benefit through

applying charge backs render them liable under the common law doctrines of

unjust enrichment/quantum meruit, pursuant to the common law of Michigan.


## JURY DEMAND

Plaintiffs request a trial by jury on their claims.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

> 1.      Permission for individuals throughout the state of Michigan, who perform telecommunications installation services for LeCom, are classified as independent contractors, and have not been paid overtime for hours greater than forty (40) worked in a week, to opt-in to this action, pursuant to § 216(b) of the FLSA;

> 2.      The certification of a class of all LeCom employees who had payment deducted from their paychecks as "charge backs" in the past six years for alleged deficiencies in installation services or other perceived violations of LeCom policies.

> 3.      All damages to which the named Plaintiffs and class members may be entitled;

> 4.      Liquidated and multiple damages as allowed by law, including double damages for the FLSA claim;

> 5.      An injunction ordering Defendant to cease its violations of the law as described here;

> 6.      Attorneys' fees and costs; and

> 7.      Any other relief to which the plaintiffs may be entitled.

Respectfully submitted,
HARRY BENION, ZACHARY
GOODGALL, DAMON FRANKLIN, and
all others similarly situated,

By their attorneys,

  /s/ Harold L. Lichten
Harold L. Lichten, BBO # 549689
Peter M. Delano, BBO # 685079 (pending admission)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 - 5800

David M. Blanchard (P 67190)
BLANCHARD & WALKER, PLLC
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313

Dated:  December 16, 2015