UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HARRY BENION, ZACHARY GOODGALL,
DAMON FRANKLIN, and LESLIE MORGAN,

               Plaintiffs,

                                      Case Number 15-14367
v.                                   Honorable David M. Lawson

LECOM, INCORPORATED, and
LECOM COMMUNICATIONS, INC.,

               Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS, GRANTING PLAINTIFFS'
MOTION FOR CONDITIONAL COLLECTIVE ACTION CERTIFICATION, AND
APPROVING JUDICIAL NOTICE TO PUTATIVE CLASS MEMBERS**

      Harry Benion and three others commenced this action against LeCom, Incorporated and

LeCom Communications, Inc. alleging that these companies misclassified them as independent

contractors in order to avoid the minimum wage and overtime obligations established by the Fair

Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*  The plaintiffs also make a claim for unjust

enrichment under Michigan common law.  The defendants have moved to dismiss the complaint

under Federal Rule of Civil Procedure 12(b)(6).  Since the case was filed, one other plaintiff has

opted in to the case, and the plaintiffs have moved to certify the case conditionally as a collective

action under 29 U.S.C. § 216(b).  The Court heard oral argument on the motions on May 10, 2016.

      The facts that the plaintiffs have alleged in their complaint map comfortably onto the Sixth

Circuit's discussion in *Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015), which

strongly favors the plaintiffs.  Their complaint touches all the bases and pleads all the elements of

an FLSA misclassification claim.  The unjust enrichment claim, however, is not well pleaded.  The

motion to dismiss, therefore, will be granted on count II and denied in all other respects. The plaintiffs' pleadings and motion papers do not elaborate very well on the existence or number of other identifiable individuals that are similarly situated to them. However, the certification standard is "fairly lenient" at this stage of the proceedings, and the plaintiffs are required to make only "a modest factual showing." *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). Therefore, the Court will grant the motion for conditional certification of the case as a collective action.

## I.  Factual Allegations

Because the focus of a motion to dismiss under Rule 12(b)(6) is on the facts stated in the complaint, the Court will summarize them here in detail. The defendants, LeCom Communications, Inc. and LeCom, Inc. (collectively "LeCom"), contract with Comcast Cable Company to perform telecommunication installations and repair services for Comcast's customers in Michigan. The plaintiffs allege that LeCom hires both employees and independent contractors, whose sole job responsibilities are to install and repair cable services. The plaintiffs allege that all of the cable installers perform the same type of work and are under LeCom's control and direction regardless of how LeCom classifies them. The plaintiffs contend that the defendants misclassified the plaintiffs as independent contractors, thus denying them the protections of employees under the FLSA, which includes overtime pay for hours worked in excess of 40 hours per week. Plaintiff Harry Benion alleges that he has worked as both an employee and an independent contractor for LeCom. Benion asserts that regardless of whether he was an employee or an independent contractor, he performed the same work, on the same number of days, and at the same level of direction by LeCom.

The plaintiffs allege that LeCom hires individuals as cable installation technicians and then misclassifies them as independent contractors. The plaintiffs maintain that in order to be hired, LeCom requires individuals to contract with one of five specific subcontractor companies at LeCom's direction. However, the plaintiffs allege that in reality it is LeCom, and not the subcontracting companies, that is employing, assigning work to, and directing each technician.

The plaintiffs allege that LeCom requires technicians to work six days a week, unless formal requests are made to LeCom. Technicians are not allowed to take any time off or work fewer than six days in a week without prior approval from LeCom. Plaintiff Benion alleges that he once asked LeCom for permission to work only five days a week, but LeCom denied his request and stated that he would be terminated if he did not report to work six days each week.

LeCom supervisors allegedly organize the daily list of job assignments into routes for each technician, and LeCom requires the technicians to report to its office every workday morning at approximately 7:00 a.m. to receive routes. Each route consists of a collection of telecommunication installation assignments at residences and businesses, and some routes require technicians to drive longer distances than other routes. The plaintiffs contend that it is LeCom alone who decides which technician is assigned to which route, so the technicians have no choice about which job assignments they work each day.

LeCom allegedly provides all of the cables, boxes, fittings, and other similar equipment that technicians need to perform cable installation and repair work for LeCom's customers. LeCom also determines the order in which the technicians perform the job assignments in their routes each day, and LeCom sets time windows for when technicians must perform each assignment. Recently, LeCom began sending job assignments directly to the technicians via company-issued smart phones

-3-

on a job-by-job basis, so that when a technician completes one job, the next job is automatically sent to that technician's phone. If a technician wishes to reject a job assignment, the technician must ask a LeCom supervisor for permission, but the plaintiffs allege that LeCom has the authority to deny permission for any reason. Once technicians complete their assigned routes each day, LeCom requires each technician to call LeCom's office and acquire a "clear code" before they are allowed to leave the field.

The plaintiffs allege that they regularly work well over forty hours each week, and as a result are unable to find time to perform the same type of work for any entities other than LeCom. And even if technicians were able to find additional work, the plaintiffs allege, LeCom prohibits its technicians from performing work for anyone other than LeCom as a matter of policy reflected in a non-compete agreement. The named plaintiffs allege that they regularly worked between 60 to 80 hours a week and sometimes more. The work days began at 7:00 a.m. and ended as late as 9:00 or 10:00 p.m. They maintain that they were not provided with any overtime compensation for hours worked in excess of 40 each week.

The plaintiffs allege that LeCom does not require technicians to have prior experience performing telecommunication installation work, and has hired technicians who had no prior experience. LeCom requires individuals with no prior experience to ride along with another technician to learn the job.

The plaintiffs also allege that LeCom directly supervises the manner in which the technicians complete their assigned work. Technicians regularly receive phone calls from LeCom employees throughout the day regarding the technicians' whereabouts and job performance, and to assign new jobs. According to the plaintiffs, LeCom controls the uniform and appearance of its technicians, and

-4-

all of the technicians must wear a shirt bearing the Comcast logo, and are prohibited from wearing a hat unless it is one that the technicians purchased from LeCom bearing the LeCom logo. Technicians are also required to wear a badge with the LeCom logo while they are working.

The plaintiffs allege that they attend mandatory morning meetings once a week in which LeCom supervisors discuss the technicians' work performance, including job completion statistics, as well as specific examples from the past week of work that the technicians did correctly or incorrectly. Technicians may be suspended for failing to report for a mandatory weekly meeting. LeCom also allegedly "writes up" any technician who is found to not meet LeCom's detailed job performance specifications.

In their complaint, the plaintiffs describe LeCom's control of the technicians' daily conduct through the use of backcharges. According to the plaintiffs, if a customer reports signal loss for any reason, the technician must return to the job site; if they fail to do that, they will be penalized by not being compensated for the job. LeCom also unilaterally deducts money from the technicians' wages if LeCom believes, correctly or incorrectly, that a technician lost equipment that LeCom issued to the technician. Even if LeCom pays a technician for completing a job, LeCom may still retroactively apply backcharges if LeCom believes a job was billed incorrectly and resulted in overpayment. Technicians are not allowed to challenge LeCom's decision to withhold pay, and LeCom has the authority to terminate any technician at any time, and for any reason.

The plaintiffs filed this putative collective action and putative class action on December 16, 2015. On February 23, 2016, the defendants filed their motion to dismiss and the plaintiffs filed a motion for conditional certification and judicial notice on March 14, 2016.

## II. Motion to Dismiss

The defendants' motion is brought under Federal Rule of Civil Procedure 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)).  Under Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, the allegations of fact are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss under that rule, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)."  *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Under the new regime ushered in by *Twombly* and *Iqbal*, pleaded facts must be accepted by the court, but conclusions may not be accepted unless they are plausibly supported by the pleaded facts.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but they are insufficient to state a claim for relief and must be disregarded.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).  However, as long as a court can "'draw the reasonable inference that the defendant

is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

The defendants have attached a number of exhibits to their motion. However, consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Although documents attached to the pleadings become part of the pleadings and may be considered, affidavits and other testimonial papers generally fall outside the circle of permissible material. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010). If a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335-36. The plaintiffs' subcontractor agreements fall within that description.

## A. FLSA Claim

The Fair Labor Standards Act requires employers to compensate employees who work more than 40 hours in a week at the premium rate of one and one-half times their base rate of pay. 29 U.S.C. § 207(a)(1). Employers covered by the FLSA who fail to comply with its requirements "may be liable to their affected employees 'in the amount of their . . . unpaid overtime compensation' and 'in an additional equal amount as liquidated damages.'" *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting 29 U.S.C. § 216(b)).

To state a claim for an overtime violation, a plaintiff must plead facts that plausibly establish "(1) an employer-employee relationship, (2) that the employees are covered, (3) the employees worked more than forty hours, and (4) that overtime was not paid. *Anderson v. GCA Servs. Grp. of N. Carolina, Inc.*, No. 15-37, 2015 WL 5299452, at *4 (W.D. Ky. Sept. 9, 2015) (citing 29 U.S.C. § 207(a)); *see also Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) (stating that "[t]he basic elements of a FLSA claim are that (1) plaintiffs must be employed by the defendants; (2) the work involved interstate activity; and . . . (3) plaintiffs 'performed work for which they were under-compensated'" (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012))); *but see Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) (holding that "[a]n unpaid-overtime claim has two elements: (1) an employee worked unpaid overtime, and (2) the employer knew or should have known of the overtime work").

The defendants' motion attacks the first element. They argue that the plaintiffs have not pleaded adequately that the defendants are their employer, and the plaintiffs, in fact, are independent contractors, and they are not employed by these defendants.

To begin, the defendants argue that LeCom Communications, Inc. is the only company that should be addressed in this lawsuit because LeCom, Inc. is a separate entity. Therefore, the defendants argue, LeCom Inc. should be dismissed from this case. That may turn out to be true; however, the present motion addresses the adequacy of the pleadings. The plaintiffs have alleged that they performed "telecommunications installation services . . . for Defendants LeCom Communications, Inc., and LeCom Inc. . . ." Compl. ¶ 1. Therefore, the complaint adequately identifies the appropriate defendants.

-8-

The defendants also insist that the plaintiffs are independent contractors, and there is no employer-employee relationship between the plaintiffs and the defendants that triggers any rights or obligations under the FLSA. That argument is largely fact-based, and the defendants make frequent reference to the exhibits attached to their brief. It bears repeating, however, that at this stage of the proceedings, the focus is on the complaint, and the legal question presented by the defendants' motion is whether the complaint contains facts that make out the elements of the plaintiffs' claims.

The defendants also concentrate a great deal of their argument on the fact that subcontractor agreements exist between the parties. However, contractual intention is not a dispositive consideration. *Keller*, 781 F.3d at 808. "'The reason is simple: The FLSA is designed to defeat rather than implement contractual arrangements.'" *Ibid.* (quoting *Imars v. Contractors Mfg. Servs., Inc.*, 165 F.3d 27 (6th Cir. 1998) (table decision); *see also Real v. Driscoll Strawberry Assoc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA."). The broad definition of "employee" under the FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). The term "employee" under the FLSA "means any individual employed by an employer." 29 U.S.C. § 203(e)(1). Although the term "work" is not defined in the statute, the FLSA defines "employ" to mean "to suffer or permit to work." 29 U.S.C. § 203(g).

The parties agree that independent contractors are not entitled to the protection of the FLSA. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947). However, the Supreme Court has observed that the FLSA "'contains its own definitions, comprehensive enough to require its

-9-

application to many persons and working relationships, which prior to this Act, were not deemed to fall within an employer-employee category.'" *Ibid.* (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150 (1947)). "Where the work done, in its essence, follows the usual path of an employee, putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Ibid.* (footnote omitted).

Independent contractor misclassification claims under the FLSA are examined using the "economic realites" test. *Keller*, 781 F.3d at 807. The *Keller* court suggested six non-exclusive factors to consider in applying that test. *Keller* provides considerable guidance here. In that case, the court considered whether satellite installation technicians for a satellite-Internet-dish installation company were independent contractors or employees. The plaintiff there, as here, worked for a subcontracting agency who contracted with a middleman satellite installation company that serviced a nationwide provider of satellite Internet systems and services. *Keller*, 781 F.3d at 805. However, in *Keller*, the plaintiff eventually left the subcontracting agency and began working for the middleman satellite installation company directly as an independent contractor. *Ibid.* The only significant difference between *Keller* and the present case is that there is an additional subcontracting agency separating LeCom and the plaintiffs. However, the defendants do not address this distinction in their motion to dismiss, and it does not affect *Keller*'s precedential guidance here. *Keller* also is different in that the case was appealed after summary judgment was granted, but that distinction does not diminish the case's usefulness here. The court of appeals reversed the dismissal, because fact issues remained on the question of the plaintiff's employment status.

The court of appeals identified these factors to use in applying the economic realities test:

1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment

or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; 5) the degree of the alleged employer's right to control the manner in which the work is performed; and 6) whether the service rendered is an integral part of the alleged employer's business.

*Keller*, 781 F.3d at 807 (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1117 & n.5 (6th Cir. 1984) (internal quotation marks omitted). The Sixth Circuit has also considered whether "the business had 'authority to hire or fire the plaintiff,' and whether the defendant-company 'maintains the plaintiff's employment records.'" *Ibid.* (quoting *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012)). No one factor is controlling. Instead, the test under the FLSA "looks to whether the putative employee is economically dependent upon the principal or is instead in business for himself." *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir. 1992); *Keller*, 781 F.3d at 807.

**1. The permanency of the relationship between the parties**

The plaintiffs allege that they worked for LeCom six days per week and were prohibited from working for anyone other than LeCom. "Generally, independent contractors have variable or impermanent working relationships with the principal company because they 'often have fixed employment periods and transfer from place to place as particular work is offered to them, whereas "employees" usually work for only one employer and such relationship is continuous and indefinite in duration.'" *Keller*, 781 F.3d at 807 (quoting *Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1442 (10th Cir. 1998)). "If a worker has multiple jobs for different companies, then that weighs in favor of finding that the worker is an independent contractor." *Ibid.* In *Keller*, the court reasoned that a jury could find that the plaintiff was an employee where he never turned down job assignments from the defendant, and he believed that he could be terminated for intransigence. *Id.* at 808. The court also noted that several aspects of the job were outside of his control, such as

-11-

where the customers lived, when the customers were available, and the amount of time to drive to each customer's house. *Ibid.*

Here, the plaintiffs allege that they have worked for as much as a decade for LeCom. And like the plaintiff in *Keller*, the plaintiffs allege that they have no control over where the assignments will be, how long the jobs will take, and they are not allowed to turn down work for fear of termination. They further allege that they are not allowed to work for another company and are bound by a non-compete agreement. *See Swinney v. AMcomm Telecommunications, Inc.*, 30 F. Supp. 3d 629, 634 (E.D. Mich. 2014) (noting that an independent contractor agreement contains a non-compete agreement, which in and of itself weighs in favor of viewing the plaintiffs as employees). This factor weighs in favor of the plaintiffs.

## 2. The degree of skill required for the rendering of the services

The defendants argue that the plaintiffs, as technicians, are part of a skilled trade akin to carpenters and electricians. The plaintiffs allege that the defendant does not require any previous experience performing cable installation and repair work, and has in fact hired technicians without any experience. "'Skills are not the monopoly of independent contractors'" *Keller*, 781 F.3d at 809 (quoting *Sec'y of Labor, U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)). The inquiry is focused on whether an individual's profits increased because of the "'initiative, judgment[,] or foresight of the typical independent contractor,' or whether his work 'was more like piecework.'" *Ibid.* (quoting *Rutherford*, 331 U.S. at 730). The Sixth Circuit noted that "[i]t is also important to ask how the worker acquired his skill." *Ibid.* (citing *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1318 (11th Cir. 2013). An independent contractor is more likely to have gained the relevant skill though "formal education, an apprenticeship, or years of experience." *Ibid.* However,

-12-

"if the worker's training period is short, or the company provides all workers with the skills necessary to perform the job," the worker is more likely an employee. *Ibid.*

Here, the plaintiffs allege that LeCom has hired individuals with no experience and has trained them by requiring them to ride along with other technicians to learn the job. The Sixth Circuit noted in *Keller* that although a satellite installation technician's skill may make them more efficient, the profession is not one that "rises or falls on the worker's special skill." *Ibid.* Certainly cable installation technicians are skilled workers. *See Herman v. Mid-Atl. Installation Servs., Inc.*, 164 F. Supp. 2d 667, 675 (D. Md. 2000) (finding there is no question that cable installation is a skilled trade). But the plaintiffs allege that a lack of the relevant skill is not a barrier to work for LeCom. The *Keller* court contrasted technicians with carpenters, who have unique skills, craftsmanship, and artistic flourish. *Ibid.* Perhaps a carpenter is not the appropriate analog because it is not hard to imagine a highly skilled cable installation technician running cable and Internet service throughout a business much in the way an electrician installs wiring or a plumber installs pipes. Nonetheless, the plaintiffs' allegations suggest that their work is more like piecework because they pick up standard parts at the LeCom warehouse and drive to a job site to install those parts, rather than using highly specialized skills and exercising their own judgment on how to complete the tasks and what parts to use. Therefore, this factor tends to favor the plaintiffs.

**3. The worker's investment in equipment or materials for the task**

To determine whether a worker's capital investment shows evidence of economic independence, courts "must compare the worker's investment in the equipment to perform his job with the company's total investment, including office rental space, advertising, software, phone systems, or insurance." *Keller*, 781 F.3d at 810. "Investment in something like welding equipment

-13-

signals a greater degree of economic independence because it is not a common item that most people use daily." *Ibid.* The defendants argue that this factor weighs in their favor because the plaintiffs provide their own vehicles, specialty tools, uniforms, and also pay their own insurance premiums and taxes. The plaintiffs counter that LeCom provides the office and warehouse out of which the plaintiffs operate, LeCom employs managers and dispatchers who oversee the plaintiffs' work, and LeCom supplies the plaintiffs with all of the cables, boxes, fittings, and other equipment that they need to perform cable installations and repair work for LeCom customers. The plaintiffs acknowledge that they own a vehicle, and the defendants require them to purchase uniforms, smart phones, and uniforms from LeCom.

The *Keller* court weighed the plaintiff's investments in a vehicle, tools, and parts against the defendant's investment in office space, telephones, and computers to schedule installation appointments. *Id.* at 811. The court discounted the investment in the plaintiff's vehicle, however, because the vehicle may also be used for personal purposes and is therefore an item used in everyday life. In *Keller*, the court held that a jury could find in favor of the plaintiff on this factor. *Ibid.* Here, the plaintiffs' allegations satisfy this factor because they allege that LeCom's investments in office space, a warehouse, and all of the parts needed for installation and repair outweighs the plaintiffs' investment in tools and vehicles.

### 4. The worker's opportunity for profit or loss, depending upon his skill

This factor questions whether workers "had an opportunity for greater profits based on [their] management and technical skills." *Id.* at 812 (citing *Brandel*, 736 F.2d at 1119). The defendants argue that the plaintiffs can control their own profits and losses by agreeing to work more hours, or by improving their technique to service customers faster and gain more routes. The plaintiffs, on

-14-

the other hand, argue that this factor weighs heavily in their favor because they were told when to report to LeCom's warehouse each morning, LeCom paid them on a piece-rate basis, and LeCom had complete discretion over the number of jobs the plaintiffs were required to complete each day. Based on the plaintiffs' allegations, it is fair to infer that they cannot unilaterally control how many customers they will service on a given day or how much they will be paid for each job, because LeCom sets the route and the price. The plaintiffs allege that LeCom required them to report for work at 7:00 a.m., and servicing a route may end as late as 10:00 p.m. on some days. The management portion of setting the routes is out of the plaintiffs' hands. And no matter how great a technician's skills are, those skills cannot make driving from job to job any more efficient. Moreover, profits may be diminished by LeCom's practice of making "chargebacks" to the plaintiffs when they are dissatisfied with a job at a later date. Therefore, as alleged, this factor weighs in the favor of the plaintiffs.

**5. The degree of the alleged employer's right to control the manner in which the work is performed**

"'Courts, in evaluating this factor, have considered such details as whether workers may choose how much and when to work, . . . whether they must wear uniforms, and how closely their work is monitored and controlled by the purported employer.'" *Swinney v. AMcomm Telecommunications, Inc.*, 30 F. Supp. 3d 629, 638 (E.D. Mich. 2014) (quoting *Scruggs v. Skylink, Ltd.*, No. CIV.A. 3:10-0789, 2011 WL 6026152, at *3 (S.D.W. Va. Dec. 2, 2011)).

According to the complaint, LeCom controls when the plaintiffs arrive to work and the number and order of jobs they will perform in a day, and requires them to receive a "clear code" before ending their day. The plaintiffs allege that they must use specific fittings and record certain

codes on specific colors of tape at various types of job installations. The plaintiffs allege that failure to comply with LeCom's procedures results in disciplinary paperwork in their personnel file that LeCom maintains for each technician. Therefore, based on the plaintiffs' allegations, this factor also favors the plaintiffs.

**6.  Whether the service rendered is an integral part of the alleged employer's business**

The plaintiffs are cable service installation and repair technicians. LeCom is a subcontractor for cable service installation and repair to a nationwide cable company. The defendants concede this factor, but argue it is the only factor that weighs in the favor of the plaintiffs. However, as noted above, all of the other factors weigh in the plaintiffs favor at the motion to dismiss phase of litigation.

**7.  Additional factors**

The Sixth Circuit also considers whether "the business had 'authority to hire or fire the plaintiff,' and whether the defendant-company 'maintains the plaintiff's employment records.'" *Id.* at 807 (quoting *Ellington*, 689 F.3d at 555). The plaintiffs allege that LeCom had the authority to terminate them and that it maintains personnel files for its technicians. Therefore, the additional factors also weigh in favor of the plaintiffs.

Because all of the economic reality factors tend to favor the plaintiffs, the plaintiffs have stated a plausible claim that they are employees rather than independent contractors under the FLSA. The defendants' motion to dismiss will be denied as to count I of the complaint.

-16-

### B.  Unjust Enrichment Claim

To plead a claim of unjust enrichment under Michigan law, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. *Fodale v. Waste Mgmt. of Michigan, Inc*., 271 Mich. App. 11, 36, 718 N.W.2d 827, 841 (2006). Michigan courts will then imply a contract to prevent unjust enrichment. *Ibid.*  However, courts will not imply a contract where there is an express contract governing the same subject matter. *Ibid.*  In count II of the complaint, the plaintiffs contend that they were deprived of compensation due to LeCom's deductions in their paychecks for chargebacks, as well as for use of uniforms, logos, and equipment that should have been provided and paid for by LeCom.  Presumably, the plaintiffs' argument rests on the allegations that they are not independent contractors and therefore the subcontractor agreements are invalid.

The plaintiffs cite *Cork v. Applebee's of Michigan, Inc*., 239 Mich. App. 311, 318, 608 N.W.2d 62 (Mich. Ct. App. 2000), as an example of Michigan courts allowing an unjust enrichment claim to proceed for waitresses alleging that a tip-sharing policy unjustly enriched their employers. However, in *Cork*, the validity of an unjust enrichment claim was not considered.  The case was remanded because the trial court had dismissed all of the common law claims when it dismissed the Wages and Fringe Benefits Act claim for failing to exhaust administrative remedies.  *Cork*, 239 Mich. App. at 318, 608 N.W.2d at 65-66.  The merits of the unjust enrichment claim were not considered, therefore *Cork* is not instructive on this case.

The parties' relationship is governed either by subcontractor agreements or an oral contract of employment.  The parties bargained for subcontractor agreements and there are no allegations that LeCom breached those agreements.  Even if the subcontractor agreements are found eventually to

-17-

be void because the parties are employer and employee, that relationship will be governed by an employment agreement. If cost of the chargebacks and other costs cause the plaintiffs' wages to fall below minimum wage, then they can recover under the FLSA. Otherwise, the recovery must come under a breach of contract theory focusing on an employment contract. Therefore, because the subject matter of the plaintiffs' unjust enrichment claim is governed by an express contract, the Court will dismiss count II of the complaint for failure to state a claim.

### III. Motion to Certify Collective Action

The Fair Labor Standards Act authorizes actions for recovery of unpaid overtime wages to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The present plaintiffs have moved for an order conditionally certifying the action as a collective action to be brought on behalf of:

> All persons who, at any time since December 16, 2012 (1) have worked as cable installation technicians for LeCom Communications, Inc., and LeCom, Inc. within the state of Michigan; (2) have been classified as "independent contractors"; (3) have not been paid time-and-a-half for hours worked over forty in a workweek.

The defendants object to the motion, arguing that conditional certification is inappropriate because the plaintiffs' employment status has not been determined. They believe that a determination first must be made whether the plaintiffs are independent contractors or employees. The defendants also argue that the plaintiffs do not meet the criteria for conditional certification. Additionally, the defendants argue that the proposed notice by the plaintiffs is deficient.

The class-based litigation format authorized by 29 U.S.C. § 216(b), labeled a collective action, "serves an important remedial purpose" by allowing "a plaintiff who has suffered only small monetary harm [to] join a larger pool of similarly situated plaintiffs" in order to reduce individual litigation costs and employ judicial resources efficiently. *O'Brien v. Ed Donnelly Enters., Inc.*, 575

-18-

F.3d 567, 586 (6th Cir. 2009) (citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989)). Although both Federal Rule of Civil Procedure 23 and the FLSA provide a vehicle for similar plaintiffs to proceed as a group against a defendant for similar harms, the Sixth Circuit has held that the two formats are different. *O'Brien*, 575 F.3d at 584 ("While Congress could have imported the more stringent criteria for class certification under Fed. R. Civ. P. 23, it has not done so in the FLSA." (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The rules applicable to class actions under Federal Rule of Civil Procedure 23 present "a more stringent standard than is statutorily required" and do not apply to collective actions under the FLSA. *O'Brien*, 575 F.3d at 584-85; *see also id.* at 586 ("[I]mposing any additional restrictions from Rule 23 would be contrary to the broad remedial goals of the FLSA." (internal citations and quotation marks omitted)).

The statute sets out two requirements for collective actions: "1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer*, 454 F.3d at 546. The criteria in such cases generally are evaluated at various stages of the litigation. *Id.* at 546-47. If the plaintiff makes the minimal showing that other employees in the proposed class are similarly situated, the court will conditionally certify the case as a collective action, and then revisit that determination after additional discovery and the opt-in procedures have completed. *Ibid.* "Conditional certification is used to determine (1) the contour and size of the group of employees that may be represented in the action so as to authorize a notice to possible collective members who may want to participate, and (2) if the members as described in the pleadings are 'similarly situated.'" 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 488-89.

-19-

The FLSA does not define the term "similarly situated" for either the first or second analytical stage; the Sixth Circuit has not spoken extensively about this issue either, nor have the other circuits. *O'Brien*, 575 F.3d at 584. In *O'Brien*, the Sixth Circuit declined "to create comprehensive criteria for informing the similarly-situated analysis." *Id.* at 585. In *Comer*, the Sixth Circuit cited approvingly the idea that a "plaintiff must show only that 'his position is similar, not identical, to the positions held by the putative class members.'" 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Alternatively, plaintiffs may show that they were subject to a "single, FLSA-violating policy" or practice by the defendant and that "proof of that policy or of conduct in conformity with that policy [including by representative testimony] proves a violation as to all the plaintiffs." *O'Brien*, 575 F.3d at 585; 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 489-90. In addition, the Sixth Circuit has held that plaintiffs were similarly situated where "their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien*, 575 F.3d at 585.

At this early stage, the courts generally employ "a fairly lenient standard" and may authorize notice on only "a modest factual showing." *Comer*, 454 F.3d at 547 (quoting *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000); *Pritchard*, 210 F.R.D. at 596); 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 488. In general, courts do grant conditional certification on this analysis. *Morisky*, 111 F. Supp. 2d at 497; *see also* 7B Wright, Miller, & Kane, Federal Practice & Procedure § 1807 (3d ed. 2005) at 486-87 ("[I]n the pretrial stage of FLSA cases, courts have broad discretion to grant certification, to allow discovery,

-20-

and to regulate notice." (footnote omitted)).  The lead plaintiffs bear the burden of meeting this requirement at both the initial and final certification stages.  *O'Brien*, 575 F.3d at 584.

There is no difficulty finding that the named plaintiffs are similarly situated.  They each applied to LeCom to work as installation and repair technicians, were directed to subcontracting agencies, but were eventually approved by LeCom directly to work, and they allege nearly identical work responsibilities.  The defendants argue that the plaintiffs have worked for varying amounts of time, but offer no authority to show that length of employment has any bearing on the similarity of each employee's situation.  They also argue that plaintiff Benion is different from the others because he was a "lead" technician.  However, that distinction merely means that he assisted other technicians (both employees and putative independent contractors) who needed help completing their installation or repair jobs.  He was still engaged in the principal activity of conducting installation and repair work for LeCom.  Moreover, the plaintiffs need only be similar, not identical, in their position.  *Comer*, 454 F.3d at 546-47.

The defendants also argue that because this Court has yet to determine the relationship and status of the plaintiffs, conditional certification is inappropriate at this stage in the litigation.  They rely on *Pfaahler v. Consultants for Architects, Inc.*, No. 99 C 6700, 2000 WL 198888 (N.D. Ill. Feb. 8, 2000), and *Bamgbose v. Delta-T Grp., Inc.*, 684 F. Supp. 2d 660, 669 (E.D. Pa. 2010)).  In *Pfaahaler*, however, the plaintiff was only able to identify three other people who were potentially in the same position as he.  *Pfaahaler*, 2000 WL 198888 at *2.  The rest of the 140 people whom the plaintiff identified were merely others who had worked in excess of 40 hours in a week; the plaintiff provided no evidence that they were similarly situated to him.  *Ibid*.

-21-

In *Bamgbose*, the defendant company was a temporary staffing agency for healthcare workers. *Bamgbose*, 684 F. Supp. 2d at 669. The *Bamgbose* court decided that conditional certification was not appropriate because it could not be shown that the 11,000 potential healthcare plaintiffs were similarly situated because the plaintiffs had a wide array of skills, responsibilities, and experiences with the defendant. *Ibid. Bamgbose* provides no guidance because the plaintiffs' proposed class consists of technicians performing nearly identical work for the defendants.

The weight of authority favors the position that conditional certification may be ordered before the employment relationship should be clarified, particularly in misclassification cases. *See e.g. Abdul-Rasheed v. KableLink Commc'ns, LLC*, 2013 WL 5954785, *6 (M.D. Fla. Nov. 7, 2013) (conditionally certifying a collective action of cable installation technicians). The Sixth Circuit allows the certification criteria in FLSA cases to be evaluated at various stages of the litigation. *Comer*, 454 F.3d at 546-47. If the plaintiff makes the minimal showing that other employees in the proposed class are similarly situated, the court will conditionally certify the case as a collective action, and then revisit that determination after additional discovery and the opt-in procedures have been completed. *Ibid.* Waiting until after the close of discovery and clarifying the employment relationship in a motion for summary judgment, for example, would be contrary to the process envisioned in *Comer*.

The plaintiffs have not identified with any particularity the extent of the group they seek to notify of the present action. As this court has noted in an earlier case, "[a]lthough numbers are not dispositive, they are indicative of the likelihood that other employees classified as the plaintiffs believe that they might be similarly-situated." *Arrington v. Michigan Bell Tel. Co.*, No. 10 10975, 2011 WL 3319691, at *5 (E.D. Mich. Aug. 1, 2011). Nonetheless, the plaintiffs have made a

"modest showing" that there are other similarly-situated workers who deal with these defendants and who allegedly have been misclassified as independent contractors. In a declaration, plaintiff Harry Benion stated that "[i]n the time that I worked for LeCom, reporting to the LeCom office every morning and evening, I regularly saw many other technicians who were 'independent contractors' like me who also started work at 7:00 a.m., worked six days each week, and worked a similar number of hours each week." Pl.'s Mot. for Cond. Cert, Benion Decl. ¶ 7. Leslie Morgan stated that he saw "many other technicians who were also classified by LeCom as 'independent contractors' while picking up and returning equipment." Morgan Decl. ¶ 5. In addition, Leslie Morgan, Jason Lofton, Zachary Goodgall, and Gregory Booker each make reference to "technicians" other than themselves, although the plaintiffs have alleged that there are both employee and independent contractors working for LeCom as technicians. It is reasonable to infer from their statements, however, that the technicians they reference are independent contractors. *See* Morgan Decl. ¶¶ 7, 18–20; Lofton ¶¶ 18-20; Goodgall ¶¶ 6, 12-13, 17; Booker Decl. ¶ ¶ 8, 11, 13, 15-21.

The Court is satisfied that the plaintiffs have met the requirements for conditional certification at this early stage of the proceedings and may notify putative class members. The Supreme Court has held that court-supervised notice to a putative class in FLSA collective actions is proper in "appropriate cases [.]" *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The defendants have objected to the plaintiffs' proposed notice on a few particular grounds, but they have not disputed the propriety of judicial notice generally, or the proposition that the Court has discretion "to authorize notification" of those individuals "to allow them to opt into the lawsuit." *Comer*, 454 F.3d at 546.

-23-

The defendants primarily object to including LeCom, Inc. as an identified defendant because that company has no relationship with the plaintiffs. However, that entity has been named by the plaintiffs as a putative employer subject to the FLSA, and naming it in the notice simply is an accurate description of the claims in the lawsuit. Next, the defendants object to the plaintiffs' request for a 90-day notice and opt-in provision. They suggest that if the plaintiffs are allowed to contact prospective plaintiffs by both regular mail and email, 60 days ought to be adequate. The defendants offer no other rationale for that proposition. One of the purposes of judicially supervised notice is to protect the claims of potential plaintiffs for unpaid overtime compensation by informing similarly-situated employees of the facts needed to make an informed decision whether to opt in. *Hoffmann-La Roche*, 493 U.S. at 170. That interest, of course, must be balanced with expeditious and prudent case management. The 90-day notice period proposed by the plaintiffs properly strikes that balance. The defendants also argue that the notice should not define the temporal class period of three years, because the FLSA statute of limitations is two years. However, an employer who commits a "willful violation" of the FLSA is subject to a three-year statute of limitations. 29 U.S.C.A. § 255(a). The plaintiffs have alleged that the defendants deliberately misclassified workers in the past to avoid paying overtime compensation, suggesting that the violations alleged here may be part of the same desire to avoid FLSA obligations. It is appropriate to allow a three-year look-back period in the notice where "[t]he absence of willful conduct is not established as a matter of law by the pleadings." *Colley v. Scherzinger Corp.*, No. 15-720, 2016 WL 1388853, at *4 (S.D. Ohio Apr. 6, 2016).

The defendants point out that the plaintiffs' proposed notice contains the misstatement that "[t]he Court has made any determination of the plaintiffs' FLSA claims." Of course, the notice

-24-

should read that the Court has *not* made such a determination.  Otherwise, the notice is accurate, acceptable, and approved.

### IV.  Conclusion

The plaintiffs have stated a viable claim in count I of their complaint for violation of the Fair Labor Standards Act as to the named defendants.  They have not stated a valid claim for unjust enrichment.  The plaintiffs have established a right to conditional certification of the claim in count I as a collective action.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss [dkt. #12] is **GRANTED IN PART AND DENIED IN PART**.  Count II of the complaint is **DISMISSED WITH PREJUDICE**.  The motion is **DENIED** in all other respects.

It s further **ORDERED** that the plaintiffs' motion for conditional certification of their Fair Labor Standards Act claim as a collective action [dkt. #16] is **GRANTED**.

It is further **ORDERED** that the defendants must furnish to counsel for the plaintiffs the last known post office and email addresses of the potential members of the described class **on or before June 3, 2016**.

It is further **ORDERED** that the plaintiffs shall modify their proposed notice to correct the language as noted above, and then deliver notice promptly to putative class members by United States mail, email, or both.  The notice shall state that interested persons may opt in to this litigation **on or before September 2, 2016**, but not thereafter.

s/David M. Lawson                         
DAVID M. LAWSON
United States District Judge

Dated:  May 13, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 13, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI