## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

_____

|  |  |  |
|---|---|---|
| HARRY BENION, ZACHARY GOODGALL, DAMON FRANKLIN, LESLIE MORGAN, and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:15-cv-14367 |
| v. | ) ) | Hon. David M. Lawson |
| LECOM COMMUNICATIONS, INC., and LECOM, INC., collectively d/b/a "LECOM," JOSEPH LENTINE, and JEFFREY GENDRON, | ) ) ) ) ) | Mag. Judge Mona K. Majzoub |
| Defendants | ) ) | |

_____ )

## PLAINTIFFS' UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

1

## STATEMENT OF ISSUES PRESENTED

1.      Should the Court find that the Parties' proposed settlement of this case is a

fair and reasonable resolution of a bona fide dispute and approve the settlement?

    Plaintiffs' Response: Yes.

## CONTROLLING AUTHORITY

Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513 (6th Cir. 1993)

Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962 (6th Cir. 1991)

Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188 (6th Cir. 1974)

Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350,
        (11th Cir. 1982).

Osman v. Grube, Inc., 2018 WL 2095172 (N.D. Ohio May 4, 2018)

Snook v. Valley Ob-Gyn Clinic, P.C., 2015 WL144400 (E.D. Mich. Jan. 12, 2015)

Diaz v. Scores Holding Co., Inc., 2011 WL 6399468 (S.D.N.Y. July 11, 2011)

Gentrup v. Renovo Services, LLC, 2011 WL 2532922 (S.D. Ohio June 24, 2011)

Dillworth v. Case Farms Processing, Inc., 2010 WL 776944
        (N.D. Ohio March 8, 2010)

29 U.S.C. § 216(b)

## I.    INTRODUCTION

Plaintiffs hereby submit this unopposed motion seeking approval of a FLSA settlement in this case that was reached after years of vigorous litigation and two mediations, the last one taking place on November 9, 2018 before David Kotzian. As this court knows, Plaintiffs filed this lawsuit on behalf of themselves and similarly situated technicians who performed cable installation and repair in Michigan for Comcast.  Plaintiffs allege that Defendants misclassified them as independent contractors and violated the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") by failing to pay them overtime despite regularly working more than 40 hours per week. Defendants vigorously deny all of Plaintiffs' claims on the grounds that their pay policies and practices are legal and valid under all relevant laws.[1]

After full litigation and on the eve of trial, as the result of a full-day, in-person mediation session in Farmington Hills, Michigan with experienced mediator David Kotzian, on November 9, 2018,[2] the Parties were able to reach a collective, non-reversionary settlement of this matter for $412,000. See Lichten Decl. (attached as Ex. A) ¶ 9. The terms of the Parties' settlement are set forth in the Parties' Settlement

---

[1]     As a part of this Motion, the Parties request that the Court stay all pending filing and pretrial dates while it considers this Motion.

[2]     The Parties also mediated before the Honorable James J. Rashid on November 3, 2017.

Agreement (attached as Ex. B), which is currently out for signing. The much smaller related case entitled <u>Bentley et al. v. LeCom, Inc. et al.</u>, Civ. Act. No. 2:16-cv-13640-DML-MKM (E.D. Mich.), was also settled at that time (also subject to court approval) for the amount of $72,000.[3]

Class Counsel believes that the negotiated Settlement Agreement provides a very fair and reasonable settlement for the 43 Named and Opt-in Plaintiffs with respect to their claims for unpaid overtime, especially when taking into consideration the possibility that the Litigation, if not settled now, might not result in any recovery that could ever be collected (see discussion below). LeCom Communications is no longer in the cable installation business and its continued existence is not certain, and there is no certainty that Plaintiffs could establish individual liability for Defendants Lentine and Gendron at trial – as such, there is a significant risk that if the case is not settled now, Plaintiffs will not be able to collect on any judgment. Moreover the settlement provides substantial compensation for each of the Named and Opt-in Plaintiffs. Some Named and Opt-in Plaintiffs will be receiving more than $10,000, over 20 Plaintiffs will be receiving over $5,000 and 42 out of the 43

---

[3]     In <u>Bentley</u>, the damages are relatively modest, because the plaintiffs were classified as employees of LeCom Communications' subcontractor Detroit Communications Direct, LLC, and the claims are limited to unpaid overtime resulting from breaks that were deducted from their time sheets that they did not actually take. <u>See</u> <u>Bentley</u>, Civ. Act. No. 2:16-cv-13640-DML-MKM, Third Amended Complaint, Dkt. 40 (E.D. Mich. Sept. 5, 2017). The <u>Bentley</u> plaintiffs will submit a separate motion for final approval of that settlement.

Plaintiffs will be receiving over $1,000. <u>See</u> Settlement Distribution List (attached as Ex. D). The average settlement share is expected to be approximately $5,000. Under no circumstances will any of the settlement funds revert to Defendants in the event of uncashed settlement checks.

Plaintiffs respectfully submit that this motion should be granted because the proposed Settlement Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

Accordingly, Plaintiffs request that the Court issue an order: 1) granting approval of the proposed Settlement Agreement; 2) approving attorney's fees in the amount of approximately one-third of the Total Settlement Amount plus partial reimbursement for out of pocket costs; 3) approving the distribution of incentive payments to the four named Plaintiffs as described below. Once LeCom Communications has submitted the Settlement Payment to the escrow account of the mediator David Kotzian, the Parties will jointly move to dismiss or withdraw Defendants Lentine and Gendron based on a finding that they have not been found liable for any FLSA violations. Once the dismissal of the individual Defendants is entered, then the Parties will jointly move to dismiss with prejudice the 43 Plaintiffs' claims. Defendants do not oppose this motion. A proposed Order granting this requested relief is attached as Exhibit E.

## II.   PROCEDURAL BACKGROUND AND TERMS OF SETTLEMENT

On December 16, 2015, Plaintiffs Harry Benion, Zachary Goodgall, Damon Franklin, and Leslie Morgan filed this collective action, which alleges that LeCom Communications classified its cable installation technicians as independent contractors and failed to pay the technicians any overtime compensation for hours worked in excess of forty in each workweek. (Dkt. 1.) On May 13, 2016, the Court granted conditional certification of the collective action pursuant to Section 216(b) of the FLSA (Dkt. 26), and 39 additional individuals opted in to the suit as plaintiffs (meaning a total of 43 Plaintiffs including the named Plaintiffs). On December 4, 2017, Plaintiffs filed their Second Amended Complaint, which added Joseph Lentine and Jeffrey Gendron as individual Defendants (Dkt. 105). The Parties submitted cross-motions for summary judgment, on which the Court ruled on September 30, 2018 (Dkt. 183). The Court found that LeCom Communications had misclassified the technicians as independent contractors, meaning that the issues that remain to be tried in this case are; whether and for what amount there were any overtime damages; whether Defendants Lentine and Gendron are individually liable under the FLSA, damages, and whether Defendants' violations of the FLSA were willful (Dkt. 183). Defendants have filed a motion for certification of an interlocutory appeal with respect to the conclusion that LeCom Communications was the technicians' employer (Dkt. 192), which the Plaintiffs have opposed (Dkt. 193) and which this court has denied. Trial is currently set to begin on January 2, 2018 (Dkt. 191).

6

Throughout the litigation, Defendants have denied Plaintiffs' allegations, asserted various affirmative defenses to Plaintiffs' claims, and opposed any collective treatment of Plaintiffs' claims. Defendants also expressly deny herein any and all liability to Plaintiffs.

In the course of this hotly contested litigation, the Parties engaged in substantial written discovery. Defendants produced more than 30,000 pages of records pertaining to the Opt-in Plaintiffs, including records of the jobs performed by the Plaintiffs, as well as substantial data produced by Comcast under subpoena showing the times that each job was commenced and completed. This data permitted Plaintiffs to create comprehensive spreadsheets analyzing Plaintiffs' damages. On November 9, 2018, the Parties participated in a full-day, in-person mediation session in Farmington Hills, Michigan, before experienced mediator David Kotzian. Prior to mediation, Plaintiffs provided Defendants with a comprehensive damages analysis[4] as well as a detailed mediation statement. In attendance at the mediation was Named Plaintiff Leslie Morgan, accompanied by his counsel, as well as corporate representatives for LeCom Communications, Joseph Lentine, Jeffrey Gendron, and Defendants' counsel. As a result of the mediation session, the Parties have agreed to settle the Action in accord with the terms of the Settlement

---

[4]     Plaintiffs' counsel undertook manual data entry of tens of thousands of data points related to each Opt-in Plaintiff's dates of employment and hours worked as reflected in the data provided by Defendants and Comcast.

Agreement, for a non-reversionary settlement fund of $412,000. In light of the Plaintiffs' extensive damages analysis, the risks that the Parties face proceeding to trial, and the fact that LeCom Communications is not a large company, leading to concerns regarding the company's ability to pay a larger settlement, Plaintiffs believe that this settlement is fair and reasonable.

The settlement fund would be distributed as follows: a) $225,666.66 in non-reversionary settlement shares to the 43 Named and Opt-in Plaintiffs who opted in to this lawsuit based on the overtime damages that they suffered working for LeCom Communications; b) $34,0000 as incentive payments (subject to this Court's approval) to be divided as follows: $10,000 as an incentive payment to Named Plaintiff Harry Benion; $10,000 to Named Plaintiff Leslie Morgan; $7,000 to Named Plaintiff Zachary Goodgall; and $7,000 to named Plaintiff Damon Franklin. These amounts are to compensate the Named Plaintiffs for their services as representatives for the collective action class; c) $137,333.34 in attorney's fees (one-third of the gross settlement fund) and $15,000 for costs (approximately 50% of counsel's actual costs). Included in the request for costs are costs that Plaintiffs will incur administering the settlement; Plaintiffs will administer the settlement in-house and have a skilled claims administrator on staff – this will save significant costs of using a third party administrator.

Under the agreement Defendant LeCom Communications will place the

8

settlement funds in escrow with Attorney Kotzian's law firm on or before February 5, 2019, at which time, Plaintiffs will, with the Court's permission, immediately withdraw their claims against the individual Defendants Lentine and Gendron (and if this Court has not granted approval of the settlement by February 5, 2019, LeCom Communications will deposit the settlement funds in Attorney Kotzian's escrow account within ten days of the approval date). Once such withdrawal/dismissal occurs, the money in escrow will be paid to Plaintiffs' counsel and kept as a settlement fund, and all settlement payments will be made therefrom.

Plaintiffs' counsel will mail the Plaintiffs' settlement checks directly to their clients. For any checks that are returned as undeliverable, Plaintiffs' counsel will perform a diligent search through online databases to locate an updated address for that Plaintiff so that the check can be re-mailed. As a result, it is unlikely that any settlement checks will remain uncashed. In the event that Plaintiffs' counsel is unable to reach any Plaintiffs to provide their settlement check, the checks will be voided after 120 days. The funds from any voided check will <u>not</u> revert to Defendants, but will instead be submitted to the Michigan Department of Treasury's Unclaimed Property in the name of the individual for whom the check was intended.

As discussed below, this Agreement resolves a *bona fide* and disputed claim concerning Plaintiffs' entitlement to payment for overtime under the FLSA, and the Settlement Agreement represents a fair and reasonable compromise of the claims

that were alleged. In addition, the Parties believe that the certainty of settlement is better than further litigation and the costs, legal fees, and inconvenience attendant thereto coupled with the uncertain outcome of protracted litigation and a jury trial.

## III.   ARGUMENT

### A.   Standard for Settlement Approval Under the FLSA.

The FLSA provides that "[a]ny employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, generally, are not subject to bargaining, waiver, or modification by contract or private settlement.  Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945). The two limited circumstances in which FLSA claims may be compromised are (1) when the Secretary of Labor supervises the settlement pursuant to 29 U.S.C. § 216(c) or (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). Lynn's Food Stores, Inc. v. United States, U.S. Dep't of Labor, 679 F.2d 1350, 1353 (11th Cir. 1982).

When parties bring a proposed settlement of an FLSA claim before a court, the Court must scrutinize the settlement to determine whether it is a fair and reasonable resolution of a *bona fide* dispute. Lynn's Food, 679 F.2d at 1354-55. "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over

issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation." Snook v. Valley Ob-Gyn Clinic, P.C., 2015 WL144400, at *1 (E.D. Mich. Jan. 12, 2015) (citing Gentrup v. Renovo Services, LLC, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011)); Lynn's Food Stores, 679 F.2d at 1354). Importantly, "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement," since "[p]arties may elect to opt in to an FLSA collective, but the failure to do so does not prevent them from bringing their own suits at a later date." Diaz v. Scores Holding Co., Inc., 2011 WL 6399468, at *2 (S.D.N.Y. July 11, 2011). Indeed, "Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes," and "there is a strong presumption in favor of finding a settlement fair." DeWitt v. Darlington County, S.C., 2013 WL 6408371, at *4 (D.S.C. Dec. 6, 2013).

In most cases, courts do not hold hearing on such settlements, but simply review the paperwork, and, if in order, approve the settlement. See, e.g., Aros v. United Rentals, Inc., 2012 WL 3060470, at *2 (D. Conn. July 26, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "[t]he FLSA settlement in this case meets the standard for approval" because "[t]he settlement was a result of vigorously

11

contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over much of that time."; Diaz, 2011 WL 6399468 at *2 (approving settlement of opt-in plaintiffs' FLSA claims because "[t]he settlement was the result of contested litigation and arm's length negotiation."); Ruiz v. GVMS, Inc., 2009 WL 3157349, *1 (S.D. Tx. Sept. 25, 2009) ("This court has reviewed the settlement agreement and finds that the amount to be paid to the plaintiffs and the amount of attorney's fees provided for in the settlement agreement are fair and reasonable."); Burton v. Utility Design, Inc., 2008 WL 2856983, *2 (M.D. Fl. July 22, 2008) (adopting and confirming magistrate judge's findings and recommendation to approve the proposed settlement of individual FLSA claims for opt-in plaintiffs only).

Unlike Rule 23 settlements, which typically require a two-step settlement process and an opportunity for unnamed class members to submit settlement claims, FLSA settlements can be approved simply based on the papers. See Osman v. Grube, Inc., 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (citations omitted). Because FLSA collective actions require workers to affirmatively opt-in to the litigation, "the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective action from bringing their own suits in the future," and therefore "FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions." Id. (internal citations omitted). Moreover, the Named and Opt-in Plaintiffs

have all submitted opt-in forms in which they agreed to be bound by the result of the case (See, e.g., Dkt. 38-1).

**B.    The Settlement Resolves a Bona Fide Dispute.**

The Settlement Agreement reflects the compromise of a *bona fide* dispute related to the merits of Plaintiffs' claims. In examining whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings and other motions in the case. Cooper v. Winking Lizard, Inc., 2017 WL 4455759, at *3 (N.D. Ohio Oct. 4, 2017). Courts in the Sixth Circuit have frequently found that cases in which plaintiffs have asserted that they were misclassified and suffered overtime and violations, which in turn were disputed by Defendants, present bona fide disputes. See Ross v. Jack Rabbit Services, LLC, 2016 WL 7320890, at * (W.D. Ky. Dec. 15, 2016) (finding a bona fide dispute existed where roadside service technicians alleged that they were misclassified and that the defendant failed to pay overtime); Gentrup, 2011 WL 2532922, at *2 ("First, the pleadings in this case and the representations of the parties establish that there is a bona fide dispute under the FLSA. Plaintiffs and Defendants dispute whether repossession agents are independent contractors or employees . . . and the amount of damages."); Caswell v. Ball Gentlemen's Club, LLC, 2018 WL 5369466, at * (E.D. Tenn. Oct. 23, 2018) (finding a bona fide dispute where exotic dancers alleged they were misclassified as independent contractors and suffered minimum wage, overtime, and tip violations).

There are several bona fide areas of dispute in this case that would have to be resolved at the quickly approaching trial absent a settlement. Plaintiffs allege that LeCom Communications misclassified its technicians as independent contractors. While the Court on summary judgment found that the technicians were misclassified, Defendants moved this Court to certify an interlocutory appeal (Dkt. 192). Moreover, Courts have reached conflicting results when making the determination of whether plaintiffs in similar circumstances as those here are employees or independent contractors under the FLSA. See Lang v. DirecTV, Inc., 801 F. Supp. 2d 532, 536 (E.D. La. 2011) (collecting cases); Roeder v. Directv, Inc., 2017 WL 151401, at *10 (N.D. Iowa Jan. 13, 2017) (collecting cases).

Additionally, even after the summary judgment decision, the Parties are set to go to trial on January 2, 2019, regarding whether Defendants Lentine and Gendron are Defendants under the FLSA - the jury must consider whether they exercised operational control over LeCom Communications. See Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991).  The Parties would have a dispute regarding the hours that Plaintiffs worked and therefore what – if any –overtime damages Plaintiffs would be owed.

Defendants also assert that, even if Plaintiffs prevailed on liability, Plaintiffs would not be able to demonstrate that it was a "knowing violation," such that Plaintiffs would only be able to recover under a two-year FLSA statute of

limitations. See 29 U.S.C. § 255(a); McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Ultimately, the Settlement that the Parties reached reflects what Class Counsel believes to be a fair and reasonable settlement of disputed claims that takes into account the risks that Plaintiffs would face if the case proceeded.

Most importantly, LeCom Communications no longer does cable installation and repair, and is now a very modest enterprise. It is of great concern to Plaintiffs' counsel whether it could sustain a larger judgement, and there has been no determination yet that the individual defendants can be held individually liable.

## C.  The Monetary Terms and the Release Contained in the Settlement Agreement are Fair to Plaintiffs.

In evaluating the fairness and reasonableness of the Settlement Agreement, "the Court considers the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of Plaintiffs' success on the merits, the opinion of class counsel and class representatives, the reaction of absent class members, and the public interest in settlement." Dillworth v. Case Farms Processing, Inc., 2010 WL 776944, at *6 (N.D. Ohio March 8, 2010).  Plaintiffs reiterate that the FLSA approval standard is less stringent than under Rule 23. Diaz, 2011 WL 6399468, at *2.

When using a three-year statute of limitations for Plaintiffs' FLSA claims, Plaintiffs calculate that the potential overtime and minimum wage single damages

to amount to $339,113.34.[5] See Dole, 942 F.2d at 966-67 (explaining that the statute of limitations in a FLSA action is three years for a "willful violation") (citing 29 U.S.C. § 255(a)). Plaintiffs contend that this number reflects Plaintiffs' detailed week-by-week calculations of the possible overtime damages for each Plaintiff should were they eventually successful at trial. Thus, the $412,000 settlement requires Defendants to pay approximately 121% of the total, unliquidated damages that the Plaintiffs could have recovered if they had been successful at trial. After reduction for attorney's fees, costs, and incentive payments for the Named Plaintiffs (discussed below), the Plaintiffs will receive, on average, more than 66% of the unpaid wages that they sought in this case.

This recovery reflects the fact that Defendants would have vigorously contested the merits of Plaintiffs' FLSA claims and that Defendants also contend that the shorter two-year statute of limitations under the FLSA would have been appropriate, which would limit the Plaintiffs' possible recovery. See 29 U.S.C. § 255(a). Were they successful at trial, Plaintiffs would have sought liquidated damages in an amount equal to their back pay award, but Defendants also would

---

[5]     Defendants have also provided their calculation of damages, limited to two years since they take the position that Plaintiffs cannot demonstrate that any alleged violation was willful, which amounts to approximately $92,000 in single damages. Where Defendants' damages calculation considered, the $412,000 settlement amounts to 447% of single damages, and after reduction attorneys' fees, costs, and incentive payments, on average each Plaintiff would receive 225% of single damages.

have argued that they acted in good faith and that liquidated damages were not appropriate. See 29 U.S.C. § 216 (permitting liquidated damages); 29 U.S.C. § 260 (providing the employer with a safe harbor to avoid liquidated damages where actions were undertaken in "good faith"). Given the abundance of disputed issues, a settlement that requires Defendants to pay approximately 121% of unliquidated FLSA damages during a three-year statutory period, and provides Plaintiffs with approximately 66% of their alleged unpaid overtime damages, is a fair and reasonable compromise of the Plaintiffs' claims.

The distribution of each Plaintiff's settlement share is also fair and reasonable. Plaintiffs propose to distribute the settlement funds as follows: After a deduction of the approved attorney's fees, litigation costs, and incentive payments (discussed below), the remaining settlement funds will be distributed to Plaintiffs as a pro-rata percentage of each Plaintiff's damages assuming that a three-year statutory period is applicable. These damages were meticulously calculated prior to the mediation by Plaintiffs' counsel's data analyst, utilizing Comcast records of jobs worked by each technician. Therefore, those individuals who worked longer for LeCom Communications, and had greater overtime damages under the FLSA, will receive more under the Settlement Agreement than those who worked for a shorter period of time and had lesser damages. The settlement shares range from $685 for an individual who only worked LeCom Communications for a few months during the

limitations period to $14,950 for an individual who worked many years. The average settlement share is $5,248.

The scope of the release in the Settlement Agreement is also fair and reasonable. Only those opt-in Plaintiffs who have received settlement shares will release claims, which will be limited to "wage claims" that they may have against Defendants, and accompanying claims for attorney's fees and costs. There is no release of prospective rights or non-wage claims,[6] and there are no burdensome "confidentiality" provisions that would defeat the purposes of the FLSA.[7] Any individuals who do not receive settlement shares will not release any claims.

The Parties came to this agreement after voluminous discovery, the Plaintiffs having received over 30,000 pages of documents, and motion practice, and with trial approaching on January, 2018. Additionally, the negotiations were conducted in good faith and without collusion. Like in Dillworth, 2010 WL 776933, at *6, this settlement was "only reached after the parties engaged in arms-length negotiation, following extensive investigation and discovery." The settlement was reached only

---

[6]    Named Plaintiffs will also sign a general release, which courts have found to be allowable in FLSA collective actions settlements. See Rice v. Metroplex Corp., 2017 WL 3037498, at *2 (M.D. Fla. June 30, 2017); Duprey v. Scotts Co. LLC, 30 F. Supp. 3d 404, 410-11 (D. Md. 2014).

[7]    The Confidentiality provision in the Agreement is limited – it recognizes that the Agreement will be in the public record and simply requires that the parties not discuss the terms of the agreement with anyone aside from their spouses, attorneys, tax advisors, or Defendants' corporate officers.

after a day-long mediation with David Kotzian, a highly respected Michigan mediator who specializes in labor and employment disputes. Moreover, Plaintiffs' counsel are highly skilled employment/wage and hour lawyers with significant experience in the field. David Blanchard is one of Michigan's premier plaintiff wage and hour litigators, having litigated many wage and hour cases, and his co-counsel, Harold Lichten, is the co-founder of a preeminent class action employment law firm that has pioneered the field of the misclassification of employees as independent contractors. See Blanchard Decl. ¶¶ 8-12; Ex. C; Lichten Decl. ¶¶ 2-6, Ex. A. Mr. Lichten's law firm has brought numerous cases on behalf of cable and satellite television installers against installation companies in a number of states, as well as challenging misclassification in many other fields.

### D. The Proposed Incentive Payments are Fair and Reasonable.

The settlement also provides for the following incentive payments, which are fair and reasonable: a) $10,000 to Named Plaintiff Harry Benion; b) $10,000 to Named Plaintiff Leslie Morgan; (c) $7,000 to Named Plaintiff Zachary Goodgall; and (d) $7,000 to Named Plaintiff Damon Franklin for the services that they rendered as the Named Plaintiffs. These modest amounts are consistent with incentive payments that have been approved in similar cases. See, e.g., Whitlock v. FSL Management, LLC, 2015 WL 9413142, at (W.D. Ky. Dec. 22, 2015) (noting that "district courts in the Sixth Circuit routinely grant incentive awards to representative

plaintiffs when the representative plaintiff actively participates in the litigation" and approving incentive awards ranging from $6,351 to $10,029); Johnson v. Midwest Logistics Systems, Ltd., 2013 WL 2295880, at *5 (S.D. Ohio. May 24, 2013) (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement); E.E.O.C. v. Wal-Mart Stores, Inc., 2011 WL 6400160, at *3 (E.D. Ky. Dec. 20, 2011) (awarding incentive payments ranging from $13,500 to $3,500 totaling $270,000).

Courts have routinely recognized the importance of such incentive payments in wage cases of this nature, where "the plaintiff is often a former or current employee of defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class [as] a whole, undertaken the risk of adverse actions by the employer or workers." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005). Here, the proposed additional payment is justified by the benefits that the individuals in question brought to the additional Class Members. Plaintiffs took significant risks in coming forward to represent the interests of their fellow workers, and they worked with Plaintiffs' Counsel, providing background information about their work, about Defendants' policies and practices, participating in document discovery, and sitting for deposition. For these reasons, it the Court should approve the requested incentive payments.

### E.  The Requested Attorney's Fees and Costs Fairly Compensate Plaintiffs' Counsel for their Time and Expenses.

The Settlement Agreement further provides for the payment to Plaintiffs' counsel of $15,000 in costs (which represents only 50% of the actual out-of-pocket costs in this case of approximately $30,000), and attorney's fees in the amount of $137,333.34, which, after the $15,000 of costs that Plaintiffs' counsel will not seek to have reimbursed amount to $122,333.35 (approximately 29% of the gross settlement of $412,000). Plaintiffs' Counsel advanced $30,000 in costs during the litigation and spent more than 1,300 hours advocating on behalf of the class, totaling over $600,000 in fees at their standard rates. Lichten Decl. ¶¶ 7-8, Ex. A; Blanchard Decl. ¶¶ 13-15, Ex. C. Plaintiffs' counsel requests recovery of approximately 50% of the costs already incurred in pursuit of the Plaintiffs' claims, the majority of which was spent on mailing of the FLSA notice, travel, the cost of deposition, the Plaintiffs' share of mediation fees for both mediations in this case, and flights and lodging for the mediations.

The Sixth Circuit requires "only that award of attorney's fees by federal courts in common fund cases be reasonable under the circumstances. Rawlings v. Prudential-Bache Properties, Inc., 9 F.3d 513, 516 (6th Cir. 1993) (internal citation omitted). The trend among most courts is to favor the percentage of the fund approach to awarding attorney's fees because it "more accurately reflects the results achieved." Id. The percentage of the fund approach awards counsel for effectively bringing a class action case to a resolution rather than prolonging the case in the

hopes of artificially increasing the number of hours worked in the case. Id. Many courts utilize the percentage of the fund method, but then "crosscheck" that percentage to ensure that the percentage award is fair and reasonable. See Doe 1-2 v. Déjà vu Services, Inc., 2017 WL 2629101, at *10 (E.D. Mich. June 19, 2017) (citing Gascho v. Global Fitness Holdings, LLC, 822 F.3d 269, 279 (6th Cir. 2016). Here, where Plaintiffs' counsel are seeking less than thirty percent of their lode star fees, the reasonableness of their request is self-evident.

Plaintiffs' counsel requests an award of about 29% of the gross settlement amount. Courts in the Sixth Circuit and from around the country have awarded similar percentage fees in other class and collective actions. See e.g., Osman, 2018 WL 2095172, at *3 (approving  Plaintiffs' request for one-third of the common settlement fund);  Vela v. City of Houston, 276 F.3d 659, 681 (5th Cir. 2001) (noting fee awards generally ranging from 35% to 40% are common in cases taken on a contingent fee basis; Decohen, 299 F.R.D. at 482-83 (awarding one-third of $3,050,000 settlement fund, which amounted to a 3.9 multiplier). Fees within this range are "presumptively reasonable." Vaszlavik v. Storage Tech. Corp., 2000 WL 1268824, at *4 (D. Colo. March 9, 2000). And, as is explained below, even if the Court considers the lode-star amount of fees, Plaintiffs' request is imminently fair.

In determining the reasonableness of the fee award, courts also consider the following factors: "(1) the value of the benefit rendered to the class (i.e., the results

achieved); (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides." Osman, 2018 WL 2095172, at *3 (citing Ramey v. Cincinnati Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974). Plaintiffs suggest that all of the factors point in the direction of approving the requested fee. As explained above, the results obtained for the class are exceedingly reasonable. The second factor, the quality, skill, and efficiency of the attorneys involved also points in the direction of approval again, as was explained more fully above, both David Blanchard and his co-counsel Harold Lichten of the firm Lichten & Liss-Riordan, P.C. are highly experienced and capable. See Lichten Decl. ¶¶ 2-6, Ex. A; Blanchard Decl. ¶¶ 8-12, Ex. C.  As a result of their immense combined experience, both Mr. Lichten and Mr. Blanchard were able to work efficiently and to divide tasks up appropriately. Both firms collectively have spent over 1,300 hours on the case. There were motions filed, discovery disputes over classwide discovery, meetings with clients, and hearings before this court. Additionally, as trial was set to begin on January 2, 2018, Plaintiffs' counsel spent significant time preparing for trial. Further, Plaintiffs' counsel spent an enormous amount of time compiling detailed spreadsheets in order to calculate the damages.

Based on reasonable hourly rates, Plaintiffs estimate that they have generated more than $600,000 in attorney's fees, meaning that Plaintiffs' requested amount for fees and costs of $137,333.34 is actually significantly less than the lodestar amount. See Lichten Decl. ¶ 7, Ex. A; Blanchard Decl. ¶¶ 13-15; Ex. C. "Courts routinely award counsel two to three times lodestar in class action settlements. Johnson v. Brennan, 2011 WL 4357376, at * 13 (S.D.N.Y. Sept. 16, 2011) (collecting cases); see also Beasley v. Custom Communications, Inc., No. 15-00583, ECF No. 116 (E.D.N.C. Oct. 24, 2017) (approving one-third contingency fee with a 1.11 lodestar multiplier); Badia v. Homedeliverylink, No. 12-6920, ECF No. 99 (granting one-third award of attorney's fees with multiplier of 1.59); In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) (finding multiplier of 2.02 is "appropriate"); In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (finding no abuse of discretion where district court approved attorney's fees with a "fairly common" lodestar multiplier of 4.07 despite objection that lodestar multiplier could not be above 3).

An evaluation of the complexity and duration of the case also supports the requested fee. In this case, Plaintiffs and Defendants agree that there are numerous disputed issues of fact and law, including whether Named and Opt-in Plaintiffs were misclassified as independent contractors and entitled to overtime compensation, whether Defendants Lentine and Gendron were individually liable, and whether

Defendants' alleged violations were willful. Defendants would contest the number of overtime hours worked. Because Defendants had potentially strong legal and factual defenses to Plaintiffs' claims, especially with respect to the individual liability of Defendants Lentine and Gendron, an outcome of zero recovery for Plaintiffs was possible (especially in light of the fact that LeCom Communications' business has been significantly reduced in recent years). Class Counsel accepted these risks, diligently prosecuted the case, and negotiated a substantial recovery. Moreover, both trial and judicial review are unpredictable and could adversely affect the scope of an ultimate recovery, if not the recovery itself. Indeed, as the U.S. District Court for the Southern District of New York observed:

> Even a victory at trial is not a guarantee of ultimate success. If plaintiffs were successful at trial and obtained a judgment for substantially more than the amount of the proposed settlement, the defendants would appeal such a judgment. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.

In re Warner Commc'ns Sec. Litig., 618 F. Supp. 735, 747-48 (2d Cir. 1986).

For all these reasons, the fee requested by the Plaintiffs of $137,333.34 in compensation for attorney's fees, and which represents one-third of the total settlement, as well as $15,000 for 50% of their actual costs, is fair and reasonable.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Settlement Approval should be granted in full.

Respectfully submitted,

HARRY BENION, ZACHARY
GOODGALL, DAMON FRANKLIN, and
all others similarly situated,

By their attorneys,

 /s/ Harold L. Lichten
Harold L. Lichten, BBO # 549689
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 - 5800

David M. Blanchard (P67190)
BLANCHARD & WALKER, PLLC
221 North Main Street, Suite 300
Ann Arbor, MI 48104
(734) 929-4313

Dated:  November 19, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2018, I electronically filed the
foregoing paper with the Clerk of the Court using the ECF system, which will send
notification of such filing to all attorneys of record.

/s/ Harold Lichten
Harold Lichten